UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID J. SCOTT

        Plaintiff,

                                            Case Number 01-10274-BC

v.                                         Honorable David M. Lawson

BRENDA EVANS, SANDRA E. SADOWAY,
and ERIK WALTER,

        Defendants.
_____/

**ORDER REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, SUSTAINING IN PART AND OVERRULING IN PART
PLAINTIFF'S OBJECTIONS, GRATING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT,
DISMISSING CASE, AND DENYING VARIOUS MOTIONS AS MOOT**

       This matter is before the Court on the plaintiff's objections to a report issued on August 25, 2005 by Magistrate Judge Charles E. Binder recommending that this Court grant the defendants' motion for summary judgment because they are immune from liability for money damages under the doctrine of quasi-judicial immunity. The magistrate judge also suggested that the Court deny the plaintiff's motion to amend his complaint because the proposed amendment would be futile. The plaintiff objects on the grounds that the cases upon which the magistrate judge relied are distinguishable and the defendants' actions were both intentional and ministerial, precluding a grant of immunity.

       After a *de novo* review of the record in light of the plaintiff's objections, the Court finds that the magistrate judge erred in concluding that the defendants were entitled to quasi-judicial immunity. However, the plaintiff has not demonstrated that he was denied meaningful access to the courts by the clerks' failures to file his proofs of service, and therefore his claim based on 42 U.S.C.

§ 1983 cannot be sustained. As a result, even if permitted to amend his complaint, the plaintiff still fails to state a claim upon which relief can be granted. The Court therefore will reject the magistrate judge's report, adopt the recommendation, sustain in part and overrule in part the plaintiff's objections, grant the defendants' motion for summary judgment, deny the plaintiff's motion to amend his complaint, and dismiss the case.

I.

The magistrate judge sets forth the relevant facts and procedural history in his report, to which neither party objects. The case concerns the claim that the plaintiff was denied his constitutional right of access to the courts when the defendant court clerks repeatedly failed to file proofs of service that the plaintiff sent to the Livingston County Clerk's office so that the plaintiff could proceed with a review of an adverse prison misconduct adjudication. The Court finds that the magistrate judge's fact recitation faithfully tracks the record as presented to him by the parties, and therefore the Court adopts it here.

II.

A motion for summary judgment under Fed. R. Civ. P. 56 presumes the absence of a genuine issue of material fact for trial. It is "appropriate [when] 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Frazier v. Honda of America Mfg., Inc.*, 431 F.3d 563, 565 (6th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). Summary judgment under Rule 56 is a particularly useful method of addressing an issue when the parties agree that there are no material facts in dispute and "the sole question at issue [is] a question of law." *United States v. Donovan*, 348 F.3d 509, 511 (6th Cir. 2003); *see also*

*Wachovia Bank v. Watters*, 431 F.3d 556, 559 (6th Cir. 2005); *Progressive Corp. and Subsidiaries v. United States*, 970 F.2d 188, 190-91 (6th Cir. 1992). The quasi-judicial immunity question presents such an issue.

Otherwise, when adjudicating a motion for summary judgment under Rule 56, the Court views the evidence and "'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). However, once the moving party has made the "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the nonmoving party cannot rest on her pleadings but must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex*, 477 U.S. at 324; *Hall v. Tollett*, 128 F.3d 418, 421-22 (6th Cir. 1997). The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). She must "do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (quoting *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Applying this standard in its *de novo* review, the Court finds that the plaintiff has not met his burden.

A.

The plaintiff's main objection to the report and recommendation is his belief that the defendants are not shielded by the doctrine of quasi-judicial immunity. He argues that the

magistrate judge erroneously relied on two unpublished Sixth Circuit decisions, *Riser v. Schneider*, 37 Fed. Appx. 763 (6th Cir. 2002), and *Fish v. Murphy*, 22 Fed. Appx. 480 (6th Cir. 2001). Those cases, he believes, do not address situations in which judicial employees acted intentionally to obstruct access to the courts, as the plaintiff claims in this case. Rather, he says the cases deal with mere negligent conduct. The plaintiff also contends that the defendants were engaged in the performance of ministerial duties and therefore are not immune from civil liability. *See, e.g., Morrison v. Lipscomb*, 877 F.2d 463, 468 (6th Cir. 1989).

1.

It is beyond doubt that judicial officers are entitled to absolute immunity when acting in their official capacities. *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000). Such immunity means that officers generally are shielded from suits for "monetary damages under § 1983 for their judicial actions." *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). This doctrine of absolute judicial immunity exists so that judicial officers can be "free to make controversial decisions and act upon their convictions without fear of personal liability." *Cooper*, 203 F.3d at 944-45 (citing *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978)). The touchstone for the doctrine's applicability has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antonine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993) (citations omitted).

The Sixth Circuit has explained that a judicial officer is not absolutely immune in two circumstances, neither of which implicates the distinction between intentional and negligent conduct. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature,

taken in the complete absence of all jurisdiction." *Cooper*, 203 F.3d at 945. The determination of whether certain activity is judicial in nature ordinarily is "dependent upon the functions performed by the officer in question and the effect that exposure would likely have on the appropriate exercise of those functions." *Forrester v. White*, 484 U.S. 219, 224 (1998).

Out of necessity, immunity has been extended beyond judges to those who work in judicial administration. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). In the Sixth Circuit, "absolute quasi-judicial immunity" "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Ibid.* (internal quotation omitted). In *Bush*, the court of appeals summarized the relevant inquiry as follows:

> The Supreme Court has endorsed a "functional" approach in determining whether an official is entitled to absolute immunity. *Forrester v. White*, 484 U.S. 219, 224 (1988); *Burns v. Reed*, 500 U.S. 478, 486 (1991). Under this approach, a court "looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). For example, a prosecutor who undertakes acts in the preparation or initiation of judicial proceedings is entitled to absolute immunity. *Id.* On the other hand, when a prosecutor performs administrative acts unrelated to judicial proceedings, qualified immunity is all that is available. *Id.*

*Ibid* (some internal quotations omitted).

The magistrate judge determined, based on the two unpublished cases noted above, that the defendants in this case were performing duties that were integral or intertwined with the judicial process. In *Riser*, the plaintiff sued various municipal judges and the clerk of court for denying a motion for continuance, improperly granting a default judgment, and misfiling a motion for relief from judgment. On appeal, the court of appeals concluded that all of the officials were immune because "it is clear that the judges were acting in their judicial capacities and the clerk was acting

in a quasi-judicial capacity." *Riser,* 37 Fed. Appx. at 764.

In *Fish*, the plaintiff sued the clerk of court alleging that the wrong file date was stamped on a document, which, he claimed, resulted in the dismissal of his appeal. The district court, after screening the plaintiff's complaint, concluded that the claim was frivolous and dismissed the case. The court of appeals affirmed, reasoning that the clerk "is clearly being sued in his capacity as court clerk performing a quasi-judicial function and, as such, is entitled to a grant of absolute immunity from a suit for monetary damages." *Fish*, 22 Fed. Appx. at 482.

The plaintiff argues that the magistrate judge should not have relied on these cases because neither involved the sort of intentional conduct he alleges here. He relies on *Wojnicz v. Davis*, 80 Fed. Appx. 382 (6th Cir. 2003), for the proposition that allegations of intentional conduct are sufficient to defeat quasi-judicial immunity. That case, however, does support the plaintiff's contention. In *Wojnicz*, the plaintiff, a state inmate, alleged that the justices and clerk of the Michigan Supreme Court denied him access to the courts by rejecting his petition for state habeas corpus relief. The court of appeals held that the justices and clerk were entitled to immunity.

> First, the defendants are entitled to immunity. A judge performing his or her judicial functions is absolutely immune from suits seeking monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000). Judicial employees are immune from damages for the performance of quasi-judicial duties. *Bush v. Rauch*, 38 F.3d 842, 847-48 (6th Cir. 1994) (court administrator executing court order); *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (court clerk issued erroneous warrant on judge's order). Accepting all of his allegations as true, Wojnicz's allegations against the defendants involve actions taken while performing their judicial and quasi-judicial duties processing the state court habeas corpus petition. Whether or not they committed any errors in handling Wojnicz's habeas petition, they are immune from suit for monetary damages. Thus, Wojnicz's complaint was subject to dismissal under 28 U.S.C. § 1915A(b), because it sought monetary relief from defendants who are immune from such relief.

*Wojnicz*, 80 Fed. Appx. at 384.

As in the cases cited by the magistrate judge, the distinction as to whether actions undertaken by judicial employees were intentional or negligent was not part of immunity analysis in *Wojnicz*. The plaintiff appears to conflate the court of appeal's holding on judicial immunity with the elements of an access-to-courts claim generally. In terms of the latter, the court reasoned that "negligence does not suffice to state an access to the courts violation under § 1983. In order to establish an access to the courts violation under § 1983, a prisoner must prove that the violation was intentional, not merely negligent." *Ibid.* To be sure, the plaintiff has alleged that the defendants intentionally caused his proofs of service not to be filed; but his citation to *Wojnicz* is misplaced because the claim of intentional conduct does not address the defense of quasi-judicial immnity.

The plaintiff also relies on *Lowler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990). However, quasi-judicial immunity was not at issue in that case. As in *Wojnicz*, the court of appeals simply stated that allegations of mere negligence are insufficient to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which is a comment on the necessary elements of the claim, not the immunity defense. *Id.* at 1199 (reasoning "[a] person may be said to act in such a way as to trigger a section 1983 claim if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow"). The focus of the magistrate judge's report was not whether the plaintiff has properly alleged intentional conduct, but whether, assuming a viable section 1983 claim, the defendants nonetheless are protected from liability because of quasi-judicial immunity.

2.

It is the plaintiff's second argument that requires rejection of the magistrate judge's report.

The magistrate judge's reliance on the two unpublished Sixth Circuit decisions referenced earlier appears to be limited to the observation that the clerical personnel in those cases were performing quasi-judicial functions and they were found to be immune; therefore, the defendant clerks in this case should enjoy immunity as well. However, that rationale ignores the "functional approach" that must be applied, *see Bush*, 38 F.3d at 847, which requires an examination of the actual conduct of the judicial officer or assistant.

In *Davis v. Holly*, 835 F.2d 1175 (6th Cir. 1987), the court drew a pointed distinction between ministerial functions, because "[o]fficials "performing discretionary, as opposed to ministerial, functions are entitled to qualified immunity from suit." *Id.* at 1179 (citing *People of Three Mile Island v. Nuclear Regulatory Commissioners*, 747 F.2d 139, 143 (3d Cir. 1984)). The court explained that "'[d]iscretionary-decisional' acts are those which involve significant decision-making that entails personal deliberation, decision and judgment. 'Ministerial-operational' acts involve the execution or implementation of a decision and entail only minor decision-making." *Ibid.* (citations omitted).

Judges and other court personnel do not enjoy judicial immunity when the function they perform is not essentially judicial. *Morrison*, 837 F.2d at 463. In *Morrison*, the court of appeals found that a judge who declared a moratorium on issuing writs of restitutions to landlords during the holiday season was acting in an administrative capacity pursuant to state statute and not covered by absolute judicial immunity.

> We hold that judicial immunity does not apply. Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one. Shakoor's moratorium was a general order, not connected to any particular litigation. The order did not alter the rights and liabilities of any parties but, rather, instructed court personnel on how to process the petitions made to the court. This case differs from an adjudication in that a litigant offended by a judicial act can, in the vast

> majority of cases, appeal the court's decision to a higher court; here, no direct appeal is available, making the absence of judicial liability far less reasonable. This case also differs from that of the decision to admit someone to the bar, for it is solely the role of the court to determine who shall practice before it. One could, on the other hand, imagine a court administrator ordering that the processing of these petitions be delayed because other court business was of a higher priority. We hold, then, that the Shakoor order was an administrative, not judicial, act and that absolute immunity does not apply.

*Id.* at 466.

That argument applies with equal, if not greater, force to the actions of judicial assistants, like clerks. *See Snyder v. Nolen*, 380 F.3d 279, 288-90 (7th Cir. 2004). In *Snyder*, the plaintiff filed pleadings in a state court domestic relations proceeding. He alleged that the clerk of court removed the pleadings from the docket and "placed a large 'X' over the court's 'Filed' stamp with the word 'Error.'" *Id.* at 282. The clerk returned the documents to the plaintiff with a note that informed him that he must use the services of a divorce attorney because a child was involved in the dispute. The court of appeals held that absent an order from a judge, a clerk of court's decision to remove and return the pleadings was not a judicial activity and therefore was not afforded immunity.

> More importantly, on this record, we cannot say that a traditional judicial function that involves the exercise of discretion has been delegated to a subordinate court officer. As noted by the Supreme Court, the "touchstone" for applying absolute immunity has been "the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine*, 508 U.S. at 435. Here, Mr. Nolen's duty under the law of Illinois to maintain the official record was purely ministerial; he had no authority to resolve disputes between parties or to make substantive determinations on the worth or merits of a filing. In short, Mr. Nolen is charged with having breached his duty to perform the ministerial act of accepting technically sufficient papers. The function required of him by law involves none of the discretion that the Supreme Court has told us in *Antoine* is at the heart of absolute judicial immunity.

*Id.* at 788. The Fourth Circuit has made a similar observation with respect to the filing of court papers. *See McCray v. Maryland*, 456 F.2d 1, 4 (4th Cir. 1989).

The facts in these cases mirror the claims made by the plaintiff here. He made repeated attempts to present, persuade, and otherwise convince the Livingston County clerk defendants to place his proofs of service in the court file. He alleges that they were intransigent, and as a result his complaint for judicial review of an adverse prison disciplinary proceeding was dismissed. According to the complaint, these clerks were not carrying forward a directive of a judge, executing the prescribed functions of their office, making a decision, or interpreting a procedural rule. They simply failed or refused to carry out a ministerial act. Their acts cannot be considered as essentially "judicial," and they cannot claim immunity from liability in such a case.

Neither *Riser v. Schneider* nor *Fish v. Murphy* require a different result. In *Riser*, the court held that the municipal court clerk enjoyed judicial immunity for the role he played in the adjudication of the plaintiff's small claims action in the local court. In concluding that the clerk's mishandling of a motion for relief from judgment was an act to which the immunity defense applied, the court cited *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (per curiam). In *Foster*, the defendant was a court clerk that was sued for erroneously issuing an arrest warrant for the plaintiff. His immunity defense, the court stated, turned on "whether the issuance of a warrant for Mr. Foster's arrest was a judicial function or a non-judicial function." *Id.* at 417. The court concluded:

> The appropriate inquiry is whether the function in question is a truly judicial act or an act that simply happens to have been done by judges. We have no difficulty concluding that the issuance of the warrant for Mr. Foster's arrest, even though non-discretionary, was a "truly judicial act."

*Id.* at 417-18.

Similarly, the court in *Fish* cited *Foster* and *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973) (per curiam), to support its conclusion that the clerk's error that lead to the dismissal of the plaintiff's appeal was properly considered subject to the immunity defense. In *Denman*, the court

held that a court clerk's failure to fix bail on an arrest warrant fell within the immunity defense. The court stated: "As the plaintiffs' charge relates to an act performed by the Clerk within the scope of his official quasi-judicial duties, this defendant is entitled to immunity." *Id.* at 1098.

In *Riser*, *Fish*, *Foster*, and *Denman*, the courts examined the duties performed by the clerical personnel and did not grant immunity unless the challenged function was judicial in nature – that is, in the nature of "authoritatively adjudicating private rights," *Antoine*, 508 U.S. at 435 – or "integral or intertwined with the judicial process," *Bush*, 38 F.3d at 847, so as to make the actor "an arm of the judge." That cannot be said of the functions challenged by the plaintiff in this case. Certainly, receiving and filing court papers are important tasks, but when those acts are purely ministerial, as here, the umbrella of judicial immunity cannot be spread so wide.

The Court believes that the magistrate judge incorrectly concluded that the rudimentary filing errors alleged to have been committed by the defendants were the subject of quasi-judicial immunity. Therefore, the Court will sustain the plaintiff's objection to the report.

B.

It appears from the record, however, that despite the dismissal of the complaint for judicial review, the plaintiff was given the opportunity to receive a judicial examination of the merits of his misconduct adjudication. Based on the undisputed facts as they appear from the record, the plaintiff cannot say that he was denied "meaningful" access to the Michigan courts.

Although the magistrate judge does not address this argument, the defendants sought summary judgment on that basis as well. Because the defendants presented this argument to the magistrate judge, the Court will review it here.

Access to the courts "is a fundamental right protected by the Constitution." *Graham v.*

*National Collegiate Athletic Ass'n*, 804 F.2d 953, 959 (6th Cir. 1986). Although physical access to the courts is the most formal manifestation of that right, "[w]ithout more . . . such an important right would ring in the hallow in the halls of justice." *Swekell v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 2000) (citing *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 143 (1907)). In other words, "[a]cees to courts does not only protect one's right to physically enter the courthouse halls, but also insures that the access to courts will be adequate, effective, and meaningful." *Ibid*. Thus, if an individual effectively covers up "evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts." *Ibid.* (internal citation omitted).

The Sixth Circuit has explained that the access-to-courts analysis proceeds in steps, depending on whether the alleged violation occurred before or after the complaint was filed in state court.

> First, a court must ascertain whether the abuse occurred pre- or post-filing. When the abuse transpires post-filing, the aggrieved party is already in court and that court usually can address the abuse, and thus, an access to courts claim typically will not be viable. If the abuse occurs pre-filing, then the plaintiff must establish that such abuse denied her "effective" and "meaningful" access to the courts. She can do this only by showing that the defendants' actions foreclosed her from filing suit in state court or rendered ineffective any state court remedy she previously may have had. In most instances, state courts can address pre-filing abuses by tolling the statute of limitations or allowing for a "spoliation of evidence" lawsuit.

*Id.* at 1263-64 (citations omitted).

In this case, it is undisputed that the plaintiff filed his complaint in state court. Thereafter, the court dismissed his complaint because it found that the plaintiff had not filed his proofs of service. It also is undisputed that the plaintiff made at least two motions using available procedural mechanisms to redress his claimed wrongs. The plaintiff first filed a petition for rehearing. On

-12-

January 5, 1998, the trial court denied that motion, stating:

> Specifically, Petitioner does not present adequate reasons why he failed to comply with this Court's Orders. Upon analysis of this file, this Court finds that the Petitioner never submitted with the Court proper proofs of service of his Petition upon the Michigan Department of Corrections and the Attorney General. Instead, Petitioner now contends that "he provided proof of service verifying proper service of his petition with prison officials to mail to the Court pursuant to normal institutional procedures." However, the Court never received this proof of service.

Def.'s Mot. Summ. J. Ex. 5, Order Denying Mot. Reh'r (Jan. 5, 1998).

The petitioner then filed a motion for relief from judgment. He advanced the same general argument he advances before this Court. He alleged:

> On January 9, 1998, and contrary to this Court's finding, Brenda, from the Livingston County Circuit Court Clerk's Office, informed a one Gerald J. Foss by telephone that proofs of service in this matter were in fact received by that office on the 1st and 12th days of December 1997.

Def.'s Mot. Summ. J. Ex. 9, Mot. Relief from Judgment. In a written order, the state trial court rejected the plaintiff's argument: "However, the Court never received said proof of service as the Petitioner contends. Further, there is no clerical error as the Petitioner now alleges in that no proof of service has been filed with either the Livingston County Clerk's Office or this Court before this matter was dismissed on December 23, 1997." Def.'s Mot. Summ. J. Ex. 6, Order Denying Mot. Relief from Judgment (Jan. 27, 1998).

More to the point, it is undisputed that the plaintiff's complaint was dismissed *without* prejudice. Instead of refiling his complaint with appropriate proofs of service, he sat idle. Ultimately, the plaintiff sought review by the court of appeals, but only after waiting an entire year. The Michigan Court of Appeals rejected the appeal as untimely because it was filed over a year late. Def.'s Mot. Summ. J. Ex. 7, Court of Appeals Order (Mar. 24, 1999).

By any reasonable interpretation of the facts, no one can say that the defendant was denied

meaningful access to the courts. The abuse he alleges occurred after the state court complaint was filed. The plaintiff filed two motions seeking reconsideration of the state trial court's decision to dismiss his complaint without prejudice. The state court thoroughly considered the plaintiff's argument that his proofs of service were not filed by the defendants. The state trial court rejected it with full knowledge of the facts. Instead of refiling his claim, the petitioner waited an inordinately long period of time, untimely sought appellate review, and ultimately brought his claim in federal court.

The plaintiff does not state that the post-dismissal procedures were constitutionally inadequate or that the trial judge's decision was the result of impermissible collusion with the offending staff. Rather, he reiterates his contention that the defendants "did everything humanly possible" to defeat his efforts to obtain access to the courts while ignoring the fact that the trial court twice reviewed his arguments following dismissal of his claim. The plaintiff obviously is unhappy with the result of those adjudications, but his unhappiness does not compel the conclusion that he was denied access to the courts in violation of the Constitution. The Court therefore finds that summary judgment on the plaintiff's access-to-courts claim is warranted.

C.

The plaintiff next objects to the magistrate judge's recommendation that the Court deny his motion for leave to file an amended complaint. The magistrate judge concluded that because the plaintiff could not overcome the assertion of immunity made by the defendants, any amendment would be futile. The Court rejects that reasoning because the immunity defense is not available to the defendants. Nonetheless, the Court finds that the proposed amendment is futile and would make no difference to the result handed down here. Whether the defendants are named in their official

or individual capacities, the merits of the plaintiff's section 1983 are equally lacking, and the complaint would be subject to dismissal under Federal Rule of Civil Procedure 56(c). As a result, the Court need not grant the plaintiff's motion because doing so would be futile. *See Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000). Therefore, the plaintiff's second objection lacks merit.

D.

In a supplement to his objections, the plaintiff makes one final challenge to the magistrate judge's report and recommendation. He states that the magistrate judge should have construed his complaint as seeking injunctive and declaratory relief. The plaintiff's reasoning is clear: quasi-judicial immunity applies only to cases in which a plaintiff seeks monetary damages. *See Cooper*, 203 F.3d at 944. Thus, to the extent the plaintiff requests declaratory or injunctive relief, the assertion of immunity would not be fatal to his case.

The Court's rejection of the quasi-judicial immunity defense renders this objection moot. Moreover, the plaintiff did not make a claim for such relief in his complaint filed nearly five years ago or in his proposed amended complaint, or before the magistrate judge, this Court, or the Sixth Circuit. However, he contends that he has presented a sufficient factual basis for an equitable remedy. *See* Fed. R. Civ. P. 54(c) (stating that "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings"). Because the plaintiff's claim for equitable relief was neither presented to nor considered by the magistrate judge, the plaintiff may not rely now rely upon it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534-35 (6th Cir. 2000) (holding that "the Commissioner cannot rely on any waiver

by Heston to foreclose consideration of her claims on the merits, because the Commission failed to bring Heston's waiver to the attention of the Magistrate Judge").

III.

After conducting a *de novo* review of the record in light of the parties' objections, the Court is satisfied that the defendants' motion for summary judgment should be granted. Although the magistrate judge did not correctly apply the law and one of the plaintiff's objections has merit, the Court believes plaintiff's case ultimately must fail.

Accordingly, it is **ORDERED** that the magistrate judge's report is **REJECTED**, and the recommendation is **ADOPTED**; the plaintiff's objections are **OVERRULED**; and the complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the defendants' motion for summary judgment [dkt # 64] is **GRANTED.**

It is further **ORDERED** that the plaintiff's motions for leave to file an amended complaint [dkt #s 73, 88] are **DENIED**.

It is further **ORDERED** that the plaintiff's motion for appointment of counsel [dkt # 75] and motion to compel [dkt # 76] are **DENIED** as moot.

                                      s/David M. Lawson  
                                      DAVID M. LAWSON  
                                      United States District Judge

Dated: March 1, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 1, 2006.

                          s/Tracy A. Jacobs  
                          TRACY A. JACOBS